# GREGG v. UNITED STATES.

No. 453.  Argued February 25, 1969.—Decided April 2, 1969.

*Dean E. Richards,* by appointment of the Court, 393 U. S. 1010, argued the cause for petitioner.  With him on the briefs were *James Manahan* and *Palmer K. Ward.*

*Sidney M. Glazer* argued the cause for the United States.  With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Peter L. Strauss,* and *Beatrice Rosenberg.*

MR. JUSTICE WHITE delivered the opinion of the Court.

One afternoon, petitioner and another man robbed the post office at Louisville, Kentucky, at gunpoint.  Two women were in charge of the post office, which had just closed, and petitioner warned them: "One false move out of you, I'll blow your brains out."  They were then tied and gagged.  A week later a bank in Indiana was robbed.  Petitioner, found hiding in a motel closet with a pistol, and money orders stolen from the post office, was arrested for the bank robbery.  After a one-day

trial and 18 minutes of jury deliberation, petitioner was convicted of jeopardizing the lives of the postal custodians while robbing them.[1] The offense carries a mandatory sentence of 25 years.

Immediately after the jury returned its verdict the jurors were polled and the judge, noting the mandatory 25-year sentence, invited petitioner and his lawyer to exercise the right of allocution. Both asked that petitioner be allowed to spend a few days with his family before commencing to serve the sentence. The judge refused, and counsel for petitioner asked that a pre-sentence investigation be made. The judge interrupted:

"A pre-sentence investigation has been made. It is before me now, and I have read it. It shows a juvenile record. It shows in 1960 this defendant stole an automobile in violation of the Dyer Act and was given an indeterminate youth commitment sentence. He was paroled in 1965. He was returned—no, he was paroled in '62, returned as a parole violator in '65 and was not released full time until May of last year.

"I am also informed that he was convicted of armed robbery in Yuma, Arizona, and given from seven to ten years. Several warrants are now pending against him for robbery with which he is charged."

[1] "Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years." 18 U. S. C. § 2114.

Petitioner seeks a reversal of his conviction, asserting as his sole substantial argument that this record reveals that the trial judge had read the presentence report before the jury returned its verdict, in violation of Rule 32 of the Federal Rules of Criminal Procedure.[2]

Rule 32 is explicit. It asserts that the "report shall not be submitted to the court . . . unless the defendant has pleaded guilty or has been found guilty." This language clearly permits the preparation of a presentence report before guilty plea or conviction [3] but it is equally

---

[2] "(a) *Sentence.*

"(1) *Imposition of Sentence.* Sentence shall be imposed without unreasonable delay. . . .

.     .     .     .     .

"(c) *Presentence Investigation.*

"(1) *When Made.* The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty.

"(2) *Report.* The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. The court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon. Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government."

.     .     .     .     .

[3] The history of the rule confirms this interpretation. The first Preliminary Draft of the rule would have required the consent of the defendant or his attorney to commence the investigation before the determination of guilt. Advisory Committee on Rules of Criminal Procedure, Fed. Rules Crim. Proc., Preliminary Draft 130, 133 (1943). The Second Preliminary Draft omitted this require-

492

clear that the report must not, under any circumstances, be "submitted to the court" before the defendant pleads guilty or is convicted. Submission of the report to the court before that point constitutes error of the clearest kind.

Moreover, the rule must not be taken lightly. Presentence reports are documents which the rule does not make available to the defendant as a matter of right. There are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged. To permit the *ex parte* introduction of this sort of material to the judge who will pronounce the defendant's guilt or innocence or who will preside over a jury trial would seriously contravene the rule's purpose of preventing possible prejudice from premature submission of the presentence report. No trial judge, therefore, should examine the report while the jury is deliberating since he may be called upon to give further instructions or answer inquiries from the jury, in which event there would be the possibility of prejudice which Rule 32 intended to avoid. Although the judge may have that information at his disposal in order to give a defendant a sentence suited to his particular character and potential for rehabilitation, there is no reason for him to see the document until the occasion to sentence arises, and under the rule he must not do so.

However, on the facts of this case, it does not emerge with sufficient clarity that Rule 32 was violated, and

ment and imposed no limitation on the time when the report could be made and submitted to the court. Advisory Committee on Rules of Criminal Procedure, Fed. Rules Crim. Proc., Second Preliminary Draft 126–128 (1944). The third and final draft, which was adopted as Rule 32, was evidently a compromise between those who opposed any time limitation, and those who preferred that the entire investigation be conducted after determination of guilt. See 5 L. Orfield, Criminal Procedure Under the Federal Rules § 32.2 (1967).

we therefore affirm the judgment below. The trial judge did not state that he read the presentence report before the jury verdict was delivered, nor is there any direct evidence in this record that he did. Only a few minutes had elapsed between the delivery of the jury verdict and his statement that he had the report before him and had read it. But only a very short time was needed to read the well-organized five-page report, which was largely in widely spaced tabular form. It is entirely possible that the practice was followed of handing the report from the probation officer to the court just as the jury's verdict was delivered.

We also take note of the very special circumstances appearing in this case. Even if this record revealed that the judge had read the presentence report after the jury retired and before the return of the verdict, the judge could not have infected the jury with anything he learned from the report since there was no necessity or occasion for communicating with the jury once it began its deliberations, and the jury delivered its verdict immediately upon emerging from seclusion. Moreover, the judge had no discretion whatever in sentencing since the statute prescribed a 25-year sentence; and the only question before him was whether petitioner should be put on probation. Aside from the information about this particular crime which was developed at trial, the judge had had occasion to study a comprehensive psychiatric report on petitioner in determining his competence to stand trial. Every item of information to which the trial judge adverted in sentencing had been revealed to him in the psychiatric report. Moreover, the psychiatric report was three times as long as the presentence report, which was in every material respect a condensation of the psychiatric report. It must have been apparent at a glance to the trial judge that the presentence report contained no new information, and

his decision to refuse probation was amply supported by what he had heard at trial and read in the psychiatric report alone. Since the brief presentence report came to the same conclusion on the basis of far less detailed information than the judge already had at his disposal, there was no occasion to study it.

We are unable to conclude from this record either that the presentence report was submitted to the court before the verdict was delivered, thus violating the letter of the rule, or that the handling of the presentence report raised any possibility of prejudice to petitioner's rights under Rule 32.

For these reasons, the judgment is

*Affirmed.*